**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**In Re:**

**Settlement Facility Dow Corning Trust,**

                                      **Case No.  08-11944**

**Susan Brockmann, f/k/a Susan Breig**
**Courtney,**
                                       **Honorable Denise Page Hood**

           **Claimant.**

_____/

## OPINION AND ORDER REGARDING LATE CLAIM REQUEST
## AND
## ORDER DISMISSING ACTION

I.      **BACKGROUND**

Claimant Susan Brockmann (f/k/a Susan Breig Courtney) seeks to submit a late claim before the Settlement Facility–Dow Corning Trust ("SF-DCT") pursuant to the Amended Joint Plan of Reorganization ("Plan") in the Dow Corning Corporation ("Dow Corning") bankruptcy action.

On December 12, 2007, the Court entered an Agreed Order Allowing Certain Late Claimants Limited Rights to Participate in the Plan's Settlement Facility ("Late Claim Agreed Order") which addressed the issue of claimants seeking to submit a late claim before the SF-DCT.  The deadline for filing a Proof of Claim in the bankruptcy action was January 15, 1997 (or February 14, 1997 for foreign claimants) and for filing a Notice of Intent to participate before the SF-DCT was August 30, 2004.  (May 9, 2008 Stipulation and Order to Show Cause, p. 1, n. 1)  The Claimants Advisory Committee ("CAC") and Dow Corning agreed that late claim requests dated after June 1, 2007 or received by the Court after June 5, 2007 are presumptively without merit.  (Late Claim Agreed Order, ¶ 15)  The CAC and Dow Corning agreed that any claimant filing a late claim request would be required to show excusable neglect as to why the late claim request was submitted after June 1,

2007 or received by the Court after June 5, 2007.  (Late Claim Agreed Order, ¶ 15)

After Dow Corning and the CAC reviewed Claimant's late request, on May 9, 2008, the Court entered a Stipulation and Order to Show Legal Support and Cause Why Request to File a Late Claim in the Dow Corning Settlement Facility Should not be  Dismissed.  Dow Corning and the CAC agree that the SF-DCT records show Claimant did not timely file a Proof of Claim during the bankruptcy proceeding, did not timely submit a Notice of Intent to participate before the SF-DCT, or otherwise submit a request to participate in the Dow Corning bankruptcy case prior to June 2007. Claimant submitted a response to the Show Cause Order.  The Court addresses the reasons below.

## II.   ANALYSIS

Section 8.7 Amended Plan of Reorganization states that this Court retains jurisdiction to resolve controversies and disputes regarding the interpretation and implementation of the Plan and the Plan Documents, including the Settlement and Fund Distribution Agreement ("SFA"), and, to enter orders regarding the Plan and Plan Documents.  (Plan, §§ 8.7.3, 8.7.4, 8.7.5)  The Plan provides for the establishment of the SF-DCT, which is governed by the SFA.  (Plan, § 1.131) The SF-DCT was established to resolve Settling Personal Injury Claims in accordance with the Plan. (Plan, § 2.01) The SFA and Annex A to the SFA establish the exclusive criteria by which such claims are evaluated, liquidated, allowed and paid.  (SFA, § 5.01)  Resolution of the claims are governed by the SFA and corresponding claims resolution procedures in Annex A.  (SFA, § 4.01)

Generally, the provisions of a confirmed plan bind the debtor and any creditor.  11 U.S.C. § 1141(a); *In re Adkins,* 425 F.3d 296, 302 (6th Cir. 2005).  Section 1127(b) is the sole means for modification of a confirmed plan which provides that the proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial

2

consummation of the plan.  11 U.S.C. § 1127(b).  "In interpreting a confirmed plan courts use contract principles, since the plan is effectively a new contract between the debtor and its creditors." *In re Dow Corning Corporation,* 456 F.3d 668, 676 (6th Cir. 2006); 11 U.S.C. § 1141(a).  "An agreed order, like a consent decree, is in the nature of a contract, and the interpretation of its terms presents a question of contract interpretation." *City of Covington v. Covington Landing, Ltd. P'ship,* 71 F.3d 1221, 1227 (6th Cir. 1995).  A court construing an order consistent with the parties' agreement does not exceed its power. *Id.* at 1228.

The Supreme Court in addressing a late claim filed beyond the deadline set forth in Bankr. R. 3003 used the "excusable neglect" standard under Fed. R. Civ. P. Rule 60(b)(1) to determine whether the Bankruptcy Court had the authority to enlarge time limitations under Bankr. R. 9006(b), which is patterned after Fed. R. Civ. P. 6(b).  The Supreme Court approved the following factors that a court may consider in finding excusable neglect:  1) the danger of prejudice to the debtor; 2) the length of the delay and its potential impact on judicial proceedings; 3) the reason for the delay, including whether it was within the reasonable control of the movant; and, 4) whether the movant acted in good faith.  *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 395 (1993).  The Supreme Court disapproved the allowance of a late claim based on the omissions of an attorney.  *Id.* at 396.  The Supreme Court noted that "clients must be held accountable for the acts and omissions of their attorneys."  *Id.* at 396.  A client, having chosen a particular attorney to represent him in a proceeding, cannot "avoid the consequences of the acts or omissions of this freely selected agent," and that "[a]ny other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney."  *Id.* at

3

397.  In assessing a claim of excusable neglect, "the proper focus is upon whether the neglect of [the parties] *and their counsel* was excusable."  *Id.* (emphasis in original).  An attorney or *pro se* litigant's failure to timely meet a deadline because of "[i]nadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable neglect.'" *Id.* at 392; *Rose v. Dole,* 945 F.2d 1331, 1335 (6th Cir. 1991).  Equitable tolling, although applied sparingly, has been allowed where a claimant has actively pursued judicial remedies by filing a defective pleading during the statutory period or where the complainant has been induced or tricked by an adversary's misconduct into allowing the filing deadline to pass.  *Irwin v. Dep't of Veterans Affairs,* 489 U.S. 89, 96 (1990).  Courts have been less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his or her legal rights.  *Id.*

Addressing the prejudice to the debtor (here, reorganized debtor) factor, the Court finds that allowing this *one* claim to proceed against the SF-DCT would not greatly prejudice the assets under the Plan.  However, the history of this bankruptcy action and the post-confirmation bankruptcy proceeding, shows that numerous claimants have sought to participate in the settlement program before the SF-DCT.  The settlement fund is a capped fund over a limited time period.  Allowing this one claim would result in disparate treatment of other claimants who timely submitted their claims before the SF-DCT.  If the Court were to allow late claimants to proceed, this would result in substantial costs in terms of claim payments and administrative expenses.  The settlement fund to pay out claims and the administrative costs involved in processing the claims would significantly impact the funds available to the SF-DCT, to the timely claimants and the anticipated Premium Payments to certain claimants.  The SF-DCT and Dow Corning would be prejudiced if this and other claims are allowed to proceed before the SF-DCT.  This factor weighs in the reorganized debtor's

4

favor.

As to the delay and potential impact on the proceedings factor, again, allowing *one* claim to go forward may not further delay the administration of the Plan since claims are currently being considered by the SF-DCT. However, allowing this claim, along with other claims would further delay the administration of the Plan. Reviewing late claimants' medical records relating to their claims require significant time by the claim reviewers and would impact review of timely claims currently before the SF-DCT. This factor weighs in the reorganized debtor's favor.

Regarding the reason for the delay factor, Claimant, a surgical nurse, states that she received breast implants in 1984. In 1992, Claimant consulted with her doctor to determine whether it was okay to breast feed her child because of the "hype" at that time regarding the safety of breast implants. Claimant indicates she breast fed two children despite her implants. Although she had issues with scar tissue and disfigurement, she never pursued medical attention regarding these issues. Claimant was later diagnosed with fibromyalgia in 2007, with an elevated anti nuclear antibody ("ANA") blood level. Claimant then researched the causes and other related diseases on the internet, concluding that her breast implants may have caused her disease. She claims that she never received any notifications regarding her breast implants.

Between 1998 to 2000, Claimant was separated and then divorced, with sole physical custody of her three children until she lost custody of the children in 2006, at which time she suffered severe depression. It appears that Claimant is asserting that because she did not have any symptoms until she was diagnosed with fibromyalgia in 2007, she did not have knowledge that she had any claim related to her implants. However, Claimant had information in 1992 regarding the issues related to breast implants.

It is noted that the Plan includes "Unmanifested Claims" to be submitted in the bankruptcy action.  (Plan, § 1.18)   An "Unmanifested Claim" is defined as a "Personal Injury Claim of a Claimant who, as of the Effective Date, has not suffered any injury alleged to have been caused, in whole or in party, by a product of the Debtor."  (Plan, § 1.176)  Reviewing Claimant's reasons for the delay, the Court finds that this factor weighs in favor of the reorganized debtor since Claimant had knowledge in 1992 that there may have been issues related to breast implants.

There has been no showing of bad faith by the Claimant and this factor weighs in her favor.

Weighing the factors noted above, the Court finds Claimant has not shown excusable neglect as to why her late claim should be allowed to be submitted before the SF-DCT.

## III.   CONCLUSION

Accordingly, for the reasons set forth above,

IT IS ORDERED that Claimant Susan Brockmann's request to submit a late claim **(Doc. No. 1)** is DENIED.

IT IS FURTHER ORDERED that this matter is DISMISSED with prejudice.


*/s/ Denise Page Hood*
DENISE PAGE HOOD
United States District Judge

DATED:  March 30, 2012

### CERTIFICATE OF SERVICE/MAILING

I certify that a copy of this document was served on this date  electronically or by ordinary mail to all parties in interest.

Date:  March 30, 2012                    */s/ Sarah Schoenherr*
                                         Deputy Clerk (313) 234-5090

6